**Robert DAVIS, Plaintiff,**

v.

**Walter KELLY, Defendant.**

No. 94–CV–0954A.

United States District Court,
W.D. New York.

Aug. 7, 1997.

---

Robert Davis, Stormville, NY, Pro Se.

William Lonergan, Office of the Atty. Gen., Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1). On March 11, 1996, defendant filed a motion for summary judgment. On April 1, 1997, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendant's motion for summary judgment be granted.

Plaintiff filed objections to the Report and Recommendation on April 18, 1997, and defendant filed a response thereto. On May 1, 1997, plaintiff filed a reply to defendant's objections.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for summary judgment is granted and the case is dismissed in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by the Hon. Richard J. Arcara for pretrial matters and to hear and report on dispositive motions, pursuant to 28 U.S.C.

§ 636(b)(1). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that defendant's motion be granted.

### BACKGROUND

Plaintiff alleges that his civil rights were violated when he was transferred from Attica Correctional Facility to Clinton Correctional Facility in retaliation for initiating a lawsuit against defendant. The following facts are not disputed.

On April 9, 1991, Attica Correctional Facility submitted a transfer request to the New York State Department of Correctional Services (DOCS), Division of Classification and Movement, for permission to transfer plaintiff to Wende Correctional Facility (Items 27; & 30, Ex. A). Upon review, the Division of Classification and Movement approved the transfer order on May 20, 1991.[1]

On February 5, 1992, plaintiff filed an action under 42 U.S.C. § 1983 against defendant Kelly and other Attica staff alleging that plaintiff was prevented from participating in a prison vote involving inmate privileges, that a corrections officer "tore plaintiff's cell apart" in retaliation for plaintiff having filed a complaint against her, and that a program coordinator forced plaintiff to engage in a work assignment without pay (Items 1, Ex. B–1 & 6).

As of February 17, 1993, plaintiff had not yet been transferred to Wende Correctional Facility.[2] Attica Correctional Facility requested that the outstanding transfer order be canceled at that time (Items 1, Ex. A; & 27).

On February 25, 1993, Attica submitted a new request to the Division of Classification and Movement asking that plaintiff be transferred to any suitable maximum security facility (*Id.*). The stated reason for the request was that "it is felt inmate has become too familiar with facility as inmate has been here since 9/82" (Item 14, p. 4). The request was approved on March 30, 1993, and plaintiff was transferred to Clinton Correctional Facility on May 4, 1993.

On December 30, 1994, plaintiff filed this action under 42 U.S.C. § 1983, claiming that he was transferred in retaliation for commencing a civil rights action against defendant on February 5, 1992 (Item 1).

Defendant filed a motion for summary judgment on March 11, 1996, on the grounds that plaintiff's transfer was pursuant to a legitimate penological purpose, defendant was not personally involved in the alleged violation, and defendant is entitled to qualified immunity.

### DISCUSSION

**I. Summary Judgment.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or

---

1. Plaintiff had made numerous requests for a transfer to Wende, and apparently had no objection to this transfer order (Item 30, Ex. U–1).

2. Plaintiff's Attica Correctional Facility Service Unit Record indicates that plaintiff was scheduled for transfer to Wende on July 2, 1992, but that the transfer was canceled (Item 30, Ex. U–1). The record does not provide a reason for the cancellation, nor does either party.

on the basis of conjecture or surmise. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

## II. Retaliation.

It is well established that New York law "imposes no conditions on the discretionary power to transfer" prisoners, *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), and that transfer from one facility to another does not invoke the protection of the Due Process Clause. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976); *Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989). Nor do the laws of New York place any conditions on inter-prison transfers that give rise to a liberty interest in remaining at a particular facility. *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *see also* N.Y. Correct. Law § 23(1) (McKinney 1987) ("The commissioner of correction shall have the power to transfer inmates from one correctional facility to another.").

It is equally well established, however, that transfers may not be undertaken in retaliation for a prisoner's exercise of constitutional rights. *Meriwether, supra,* 879 F.2d at 1046; *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987); *Hohman v. Hogan,* 597 F.2d 490, 492–93 (2d Cir.1979) (per curiam).

■ In order to succeed on his § 1983 claim of retaliatory transfer, plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the defendants' decision to transfer him. *Graham v. Henderson,* 89 F.3d 75, 79–80 (2d Cir.1996) (citing *Mount Healthy School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471(1977)).

■ If the plaintiff carries his initial burden, the defendant must show by a preponderance of the evidence that the plaintiff would have been transferred "even in the absence of the protected conduct." *Mount Healthy, supra,* 429 U.S. at 287, 97 S.Ct. at 576. Thus, even if the facility's action was taken for both proper and improper reasons, the action may be upheld if it would have been taken based on the proper reasons alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (citing *Mount Healthy, supra*); *see also Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984).

As recognized by the Second Circuit, a finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that 'prison officials have broad administrative and discretionary authority over the institutions they manage.'" *Sher, supra,* 739 F.2d at. 82 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983)); *see also Lowrance, supra,* 20 F.3d at 535. Retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). Given the possibilities for such abuse, the Second Circuit requires a "higher level of detail in pleading [retaliation claims]." *Gill, supra,* 824 F.2d at 194. A complaint of retaliation that is "wholly conclusory" can be dismissed on the pleadings alone. *Flaherty, supra,* 713 F.2d at 13.

As explained by the Second Circuit in *Graham v. Henderson:*

In short, [the plaintiff]'s claim will not survive summary judgment under the *Mount Healthy* test if he does not meet the burden of demonstrating two genuine issues of material fact: (1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct—in other words, that the prison officials' actions were substantially improper retaliation. Assuming [the plaintiff] meets his burden, his claim will still not survive summary judgment under *Mount Healthy* if the defendants meet their burden of showing that there is no genuine issue as to the fact that [the plaintiff] would have received

the same punishment even if they had not been improperly motivated.

89 F.3d at 80.

█ In the present case, it is not disputed that plaintiff has a constitutionally protected right to seek judicial redress of alleged civil rights violations. However, I find that plaintiff has failed to provide any support for his conclusory allegation of a retaliatory motive for his transfer, and thus has failed to meet his initial pleading burden. Even if this were not the case, defendant has succeeded in demonstrating that there is no genuine issue as to the facts that plaintiff's transfer was not retaliatory and that plaintiff would have been transferred in any event.

Defendant states in his affidavit that on April 9, 1991, Attica Correctional Facility requested that plaintiff be transferred to Wende Correctional Facility. This request was made approximately ten months before plaintiff filed the lawsuit he claims was the basis for retaliation against him (Items 24, ¶ 3). Gerald E. Morrissey, a DOCS Classification and Movement Analyst, confirmed the date of the initial request in his affidavit (Item 24, ¶ 3). Morrissey also states that Wende Correctional Facility was given as the facility to which plaintiff wished to be transferred (*Id.* at ¶ 4).

The transfer order to Wende remained unfilled for almost two years, at which time Attica requested that the order be canceled and that plaintiff be considered for transfer to any suitable maximum security facility (Items 24, ¶ 4; & 26, ¶ 6). Morrissey states that while Attica, Clinton, and Wende are all maximum security facilities, Wende is significantly smaller in size, and that transfers to that facility are much more difficult to fill (Item 26, ¶ 8). He also notes that Attica's request for cancellation was considered appropriate where the order had been unfulfilled for nearly two years (*Id.* at ¶¶ 7, 16).

With respect to the February 25, 1993 request that plaintiff be transferred to any suitable facility, defendant states that the request was made because plaintiff had been incarcerated at Attica for ten years and had become too familiar with facility staff and procedures (Item 24, ¶¶ 5, 10). Morrissey states in his affidavit that familiarity with

staff and procedures is a valid and accepted basis for transfer (Item 26, ¶¶ 17–18). As determined above, correction facilities have discretionary power to transfer inmates. The Supreme Court has noted that "[t]ransfers between institutions ... are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security...." *Meachum, supra,* 427 U.S. at 225, 96 S.Ct. at 2538.

To summarize, a transfer order was requested for plaintiff prior to the event which plaintiff claims was the basis for retaliation. Further, his transfer was undertaken for a valid penological purpose. Thus, defendant has met his burden of showing that the plaintiff would have been transferred even in the absence of the protected conduct.

Accordingly, it is recommended that defendant's motion for summary judgment on the ground that plaintiff's transfer was not retaliatory be granted.

### III. Personal Involvement.

█ In order to state a claim for relief under § 1983 against a particular defendant, a plaintiff must show the defendant's personal involvement in the purported unlawful conduct. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Where, as in the present case, a defendant is employed in a supervisory capacity, personal involvement can include: (1) direct participation in the alleged violation, (2) failure to remedy the wrong after learning of it, (3) creation or maintenance of a policy or custom under which unconstitutional practices occurred, (4) gross negligence in supervising subordinates who committed the unconstitutional acts, and (5) exhibiting deliberate indifference by failing to act on information indicating that constitutional violations were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A § 1983 claim is properly dismissed where the plaintiff alleges nothing more than that defendant was in charge of the agency. *Gill, supra,* 824 F.2d at 196.

Plaintiff alleges in his complaint that defendant was directly involved in arranging the retaliatory transfer.

In support of his motion for summary judgment, defendant sets forth specific facts denying this claim. For instance, defendant states that he did not request that the transfer at issue be submitted to DOCS, nor did he discuss plaintiff's transfer with any of the individuals responsible for processing such requests (Item 24, ¶ 9, 12). Defendant further specifies that the 1993 request that plaintiff be transferred to "any suitable facility" was processed by the corrections counselor, senior corrections counselor and the Deputy Superintendent for Programs at Attica without input from defendant (*Id.* at ¶ 8). Gerald Morrissey states that "[t]here is nothing in the NYS DOCS records that would indicate that [defendant] had any participation in the cancellation of the outstanding 1991 transfer order or in requesting a new transfer order on February 25, 1993" (Item 26, ¶ 19).

Defendant, therefore, has met his initial burden of demonstrating the absence of a genuine issue of material fact regarding his personal involvement in plaintiff's transfer. Plaintiff, in response, has not come forth with any evidence or specific facts to raise a genuine issue for trial.

In his memorandum of law, plaintiff focuses on defendant's general supervisory responsibilities and authority as Superintendent of Attica Correctional Facility. As noted above, in order to state a claim, plaintiff must do more than merely allege that defendant was in charge of the facility.

Accordingly, it is recommended that defendant's motion for summary judgment on the ground that defendant was not personally involved in the alleged violations be granted.

## IV. Qualified Immunity.

Defendant contends that he is entitled to qualified immunity. Government officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)); *Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir.1993).

■ Thus, a defendant is entitled to summary judgment on qualified immunity grounds when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986), *quoted in Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987), the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

In most cases, this "objective" analysis forecloses inquiry into the official's subjective intent. An exception exists, however, when a plaintiff alleges intentional discrimination or retaliation, that is, claims that contain a subjective component. *See P.C. v. McLaughlin,* 913 F.2d 1033, 1042 (2d Cir.1990) (discrimination); *Musso v. Hourigan,* 836 F.2d 736, 743 (2d Cir.1988) (retaliation). In such a case, if "an official's conduct is objectively reasonable . . ., the plaintiff must proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment." *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995).

It was clearly established at the time of plaintiff's transfer that plaintiff had a constitutional right not to be retaliated against for exercising his civil rights. However, as determined above, because a transfer request was submitted for plaintiff before plaintiff filed his civil rights action, his transfer was not retaliatory. In the absence of retaliation, and in light of the unconditional discretion to transfer prisoners under New York law, no reasonable jury could conclude that it was objectively unreasonable for defendant to believe that plaintiff's transfer did not violate a federally protected right.

Accordingly, it is recommended that defendant's motion for summary judgment on the

ground that he is protected by qualified immunity be granted.

### CONCLUSION

For the reasons stated above, it is recommended that the defendants' motion for summary judgment **(Item 23)** be GRANTED and the case dismissed. Plaintiff's motion seeking an order preventing Greenhaven Correctional Facility from monitoring the pretrial conference call **(Item 21)** is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988). The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3). or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

DATED: Buffalo, New York
April 1, 1997.