Carlos **RODRIGUEZ**, Plaintiff,

v.

Sheila **JOYCE**, R.N., Patricia Keane, R.N., and Cumberland County, Defendants.

Civ. No. 87–0191 P.

United States District Court, D. Maine.

Aug. 11, 1988.

Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, Me., for plaintiff.

Mark G. Lavoie & Margaret L. Cushing, Norman, Hansm & Detroy, Portland, Maine, for defendant Cumberland County.

Frederick C. Moore, Robinson Kriger McCallum & Greene, Portland, Me., for defendant Sheila Joyce.

John G. Connor & Ernest J. Babcock, Friedman & Babcock, Portland, Me., for defendant Patricia Keane.

## OPINION AND ORDER

FUSTE, District Judge, Sitting by Designation.

This is a diversity action for medical malpractice under the Maine Tort Claims Act, 14 M.R.S.A. secs. 8101 et seq., and for civil rights violation pursuant to 42 U.S.C. sec. 1983. Jurisdiction has been pleaded pursuant to 28 U.S.C. secs. 1332, 1331, and 1343.[1] Plaintiff, Carlos Rodriguez, was a federal prisoner in the Cumberland County Jail, Portland, Maine ("jail") from July 1986 to July 1987. Defendants are the county government and two individuals employed in their capacities as nurses at the jail. Before the court are motions for summary judgment submitted by all the defendants, and plaintiff's opposition. For the reasons below, the motions are granted and the complaint is dismissed.

### The Facts

Plaintiff alleges that sometime in September 1986, he injured his finger while playing volleyball and sought medical treatment from co-defendants Sheila Joyce and Pat Keane, registered nurses employed by Cumberland County at the jail. Allegedly, they gave him aspirin for the pain and did not take an X-ray. Rodriguez reinjured the finger in April of 1987 and was treated at the Emergency Room of the Osteopathic Hospital in Portland. As a result of an X-ray and medical report rendered there, plaintiff believes that defendants provided him with inadequate medical care in the treatment of his first injury. Specifically, he contends that had the nurses taken an X-ray, they would have found that he fractured his finger and provided adequate medical care.[2]

On July 1, 1987, plaintiff filed a pro se complaint in federal court, and on June 16, 1988, after assignment of counsel, he filed an amended complaint. He filed the pro se complaint on a form entitled "Form To Be Used By A Prisoner In Filing A Complaint Under The Civil Rights Act." In Count I of the amended complaint, he alleges medical malpractice under the Maine Tort Claims Act, and in Count II, he alleges as a federal prisoner the medical mistreatment resulted in cruel and unusual punishment in violation of the eighth amendment and cognizable under 42 U.S.C. sec. 1983. Having given the relevant background, we now turn to the motions for summary judgment.

### The Maine Tort Claim

The basis of the motions to dismiss the malpractice claim is jurisdictional. The Maine Tort Claims Act ("Act") requires that a claimant must file a written notice of claim within 180 days of accrual of the cause of action, unless he can show good cause why notice "could not have reasonably been filed within" that time period. 14 M.R.S.A. sec. 8107(1). If good cause is shown, then notice is timely filed within the

---

1. Federal jurisdiction for a 42 U.S.C. sec. 1983 cause of action is available under 28 U.S.C. sec. 1343 and not pursuant to the federal question statute, 28 U.S.C. sec. 1331.

2. Even though we have taken the facts in the light most favorable to the plaintiff, we note that the complete medical records at both the County Jail and the Osteopathic Hospital fail to disclose any request for treatment for a finger injury in September 1986. As a matter of fact, the history developed by the attending physician at the Osteopathic Hospital in April 14, 1987 reveals that plaintiff "injured right ring finger playing ball yesterday when ball hit end of finger...." We also note that the radiographic report of April 14, 1987, although confirming the recent injury, specifically states that the avulsion fracture was very large and probably resulted from an anatomical variation, arthrosis, or part of an old fracture deformity. The fact remains that this last possibility is not documented in any record. We know for certain that plaintiff broke his finger on April 13, 1987.

two-year statute of limitations under the Act. *Id.*; *see also* 14 M.R.S.A. sec. 8110. The Act further provides that no action may be brought on the claim unless there is substantial compliance with the notice requirement. 14 M.R.S.A. sec. 8107(4). Plaintiff did not file the notice within the 180–day period as required by the statute. Sometime after appointment of counsel and well after the time period, plaintiff filed a notice. There is some issue in the record as to where the notice was filed, but it is not raised in the memoranda of the parties as a basis for dismissal. The issue here is whether plaintiff has shown good cause for the failure to file the timely notice.

The general purpose of the notice provision is to provide an opportunity for an amicable, out-of-court resolution of the dispute and to provide the defendant an opportunity to examine the claimant's claims and its own defenses. *Erickson v. State*, 444 A.2d 345, 349–50 (Me.1982). "The question of good cause is itself a question of fact." *Mueller v. Penobscot Valley Hospital*, 538 A.2d 294, 297 n. 3 (Me.1988). In other words, in order to defeat summary judgment on the issue of good cause, plaintiff must offer affirmatively in his complaint and opposition to motion for summary judgment, some set of factual circumstances tending to show why he was unable to comply with the notice provision. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials in his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). Plaintiff's explanation, only contained in his memorandum in opposition to the motions for summary judgment, is that his "status as a federal prisoner with language

constraints and without advice of counsel until after" expiration of the 180–day provision constitutes good cause under the Act. Plaintiff's Memorandum of Law at 7.[3]

In *Faucher v. City of Auburn*, 465 A.2d 1120 (Me.1983), the plaintiff, a child, argued that his minority status *per se* constituted good cause under the Act, but offered no evidence in support of his argument. The court found the real reason for the improper notice was not his status as a minor, but his mother's "unfamiliarity with the law," and left open the question whether a minor, in an appropriate case, could factually show that his minority status prevented him from filing timely notice. 465 A.2d at 1124.

Similarly, Rodriguez in effect argues that his prisoner status and language barrier constitute good cause, without providing any facts in support. We note, however, that he was able to file his *pro se* prisoner complaint on the proper form. The case law from the Maine Supreme Court counsel that one's status and unfamiliarity with the law are not bases of good cause. *Faucher*, 465 A.2d at 1124; *Erickson*, 444 A.2d at 350. Because the plaintiff has offered no facts in support of his claim for good cause, the court grants the motions for summary judgment, and dismisses the claim under the Maine Tort Claims Act.

### The 1983 Cause of Action

██ The premise of plaintiff's cause of action under section 1983 is that "[t]he Defendants inflicted cruel and unusual punishment upon plaintiff through the denial of necessary care in violation of 42 U.S.C. sec. 1983." Amended Complaint at para. 17. The basis of the motions to dismiss plaintiff's cause of action is that he failed to state a claim for violation of his

---

3. Plaintiff has stipulated that no notice was given within the 180–day period without waiving his right to argue good cause for the failure. Docket Document No. 31. As a matter of law, he has alleged no facts tending to show good cause.

Furthermore, the record shows that plaintiff failed to comply with the notice provision of the Maine Health Security Act, 24 M.R.S.A. sec. 2903, which provides that no action for injuries to a person arising from any medical treatment or omission shall be commenced until at least ninety days after written notice of claim setting forth under oath the nature and circumstances of the injury and damages alleged. We note, however, that our decision to dismiss is based not on this section, but on the 180–day notice provision contained in 14 M.R.S.A. sec. 8107(1).

eighth amendment rights cognizable under section 1983.

The Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), established the standard for determining whether the facts alleged in a prisoner's complaint for medical mistreatment constitute a violation of the eighth amendment's protection from cruel and unusual punishment. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Furthermore, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.*

Here, plaintiff complains that the X-ray and medical report for his second injury reveal that the nurses misdiagnosed his first injury. Had they taken an X-ray, he contends, they would have found a fractured finger and provided proper treatment. But, as the Supreme Court clearly stated in *Estelle,* merely questioning the form of medical treatment does not constitute a cognizable section 1983 claim. Plaintiff has alleged nothing more than negligent diagnosis. A decision whether or not to order an X-ray "is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293. This is quite apt in the context here, where the claim involves only a mere injury to a finger joint. The failure of the nurses to order an X-ray of plaintiff's injured finger is not cruel and unusual punishment. Our holding here is consonant with the approach towards preventing section 1983 from becoming a "national state tort claims act administered in the federal courts." *Estate of Gilmore v. Buckley,* 787 F.2d 714, 722 (1st Cir.1986), *quoting Estate of Bailey v. County of York,* 768 F.2d 503, 513 (3d Cir.1985) (Adams, J., *dissenting*).

Accordingly, we find that plaintiff's complaint does not state a cognizable claim under section 1983 for cruel and unusual punishment. He has not alleged acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. The motion for summary judgment regarding the section 1983 cause of action is also granted, and the claim is dismissed.

Judgment will be entered under separate cover. Fed.R.Civ.P. 58.

IT IS SO ORDERED.