**In re SEPTEMBER 11 LITIGATION**

**No. 21 MC 97(AKH).**

United States District Court,
S.D. New York.

May 21, 2003.

### ORDER DISMISSING CLAIMS AGAINST THE CITY OF PORTLAND, MAINE

HELLERSTEIN, District Judge.

The City of Portland, Maine ("Portland"), a defendant in a number of lawsuits in the consolidated September 11 litigation, has brought a motion to dismiss the suits. Portland argues that plaintiffs failed to comply with the notice requirements of Maine Rev. Stat. § 8107, and have not shown a legally sufficient ground to excuse their failure. I hereby grant Portland's motion.

### I.  Background

On the morning of September 11, 2001, two of the hijackers, including Mohammed Atta, allegedly boarded U.S. Airways Flight 5930 in Portland, Maine, and flew to Logan Airport in Boston, Massachusetts.

There, the hijackers connected to American Airlines flight 11 to Los Angeles, were joined by other terrorists who boarded flight 11 in Logan, hijacked the airplane, and deliberately crashed it into Tower One of the World Trade Center. The plaintiffs are representatives and next of kin of people who died in the aircraft and from the ensuing fires and collapse of the World Trade Center complex.

Twenty-three actions have been filed against the City of Portland, Maine, in its capacity as the operator of the Portland International Jetport. Plaintiffs allege that Portland "undertook and [was] required to develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security system," and that its failure reasonably to do so proximately caused the deaths complained of.

Portland's motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, argues that it has immunity from suit, that its immunity is subject to strict conditions of notice provided by Maine Rev. Stat. § 8107, and that plaintiffs failed to comply with the statute or provide legal excuse for their failure. On April 22, 2003, I converted the Rule 12(b)(6) motion into a summary judgment motion, Fed.R.Civ.P. 56, because resolution of the motion required consideration of matters outside the pleadings. I gave the parties additional time to make supplemental submissions. I now decide the motion based also on the supplemental submissions filed by the parties.

### II.  Discussion

Summary judgment may be granted if there are "no genuine issues as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of "informing the district

court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, *Harlen Assocs. v. Village of Mineola,* 273 F.3d 494, 498 (2d Cir.2001), the non-moving party must raise more than just a "metaphysical doubt" as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs.,* 273 F.3d at 499.

■ Section 408(b) of the Air Transportation Safety and System Stabilization Act of 2001, 49 U.S.C. § 40101 (2003), provides that claims arising out of, resulting from, or relating to the terrorist-related aircraft crashes of September 11, 2001 are federal claims, to be brought exclusively in the United States District Court for the Southern District of New York. However, the substantive law governing these claims "shall be derived from the law, including choice of law principles, of the state where the crash occurred," except to the extent inconsistent with federal law. *See id.* Because Portland has been named as a defendant only in actions related to the aircraft crashes in the World Trade Center, New York choice of law applies. New York choice of law rules require this court to apply the Maine Tort Claims Act to any claim brought against Portland. *Cf. Tribe v. Borough of Sayre,* 562 F.Supp. 419 (W.D.N.Y.1983) (holding that the Pennsylvania Tort Claims Act applied to an action brought by a New York resident who sued a Pennsylvania town when its police car pursued the plaintiff into New York and collided with plaintiff's vehicle).

The Maine Tort Claims Act, 14 Me.Rev. Stat. § 8102(2), immunizes the state and any political subdivision, including cities and the Portland International Jetport, from liability. This immunity is waived if the plaintiff satisfies certain criteria, including the filing of a notice of claim "[w]ithin 180 days after the claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit." 14 Me.Rev.Stat. § 8107(1) (2003). Plaintiffs did not file the requisite notice of claim until July 2002, four months after the 180 day time limit had passed. They argue, however, that their failure to comply with the filing requirement should be waived under the "good cause" exception.[1]

■ The good cause exception is "interpreted narrowly since the Maine Tort Claims Act is a 'limited relaxation' of common law sovereign immunity." *Peters v.*

---

**1.** Section 8107(5) provides the following definition of good cause:

'Good cause' as used in subsection 1 includes but is not limited to any cases in which any official of the governmental entity whose duties and authority include the settlement of tort claims or any tort liability insurer of the governmental entity makes direct oral or written contacts with the claimant or the claimant's personal representative or attorney, including payments to or on behalf of the claimant, that contain or imply a promise of coverage sufficient to cause a reasonable person to believe that the losses for which no timely notice claim is filed would be covered.'

14 Me.Rev.Stat. § 8107(5) (2003). No such settlement talks or other discussions occurred between Portland and the plaintiffs here; at least, the parties mention none.

*Westbrook,* 787 A.2d 141, 143 (Me.2001) (quoting *Smith v. School Admin. Dist. No. 58,* 582 A.2d 247, 249 (Me.1990)). "[I]n order to defeat summary judgment on the issue of good cause, plaintiff must offer affirmatively in his complaint and opposition to motion for summary judgment, some set of factual circumstances tending to show why he was unable to comply with the notice provision." *Rodriguez v. Joyce,* 693 F.Supp. 1250, 1252 (D.Me.1988). Good cause requires an inability to file the claim or proof that the plaintiff was "meaningfully prevented" from learning of the information forming the basis of the claim. *Peters,* 787 A.2d at 143. Whether the "good cause" standard has been met is a question of fact. *See Nadeau v. City of South Portland,* 424 A.2d 715 (Me.1981).

■ Plaintiffs argue that they have good cause for their failure to file a timely notice because of the difficulty of sorting through the complex factual issues related to liability for injuries incurred on September 11, 2001, the emotional turmoil they experienced following the attacks, and their indecision about whether to pursue litigation or a claim with the September 11th Victim Compensation Fund of 2001. Their counsel states that he first learned that Portland might be liable for the events of September 11, 2001 in May 2002, and then conducted a full investigation of the discovery for two months, culminating in the filing of notices of claim in July 2002. Some of the plaintiffs also argue that they have good cause because they did not retain counsel until after the 180 day limit had passed.

The plaintiffs' subjective ignorance of the underlying facts in this situation cannot constitute good cause. In *Peters v. Westbrook,* the court dismissed plaintiff's claim for failure to file a notice of claim when she did not learn that a malfunctioning defibrillator had contributed to the death of her husband until one year after his death. 787 A.2d 141 (Me.2001). The court found that the plaintiff's subjective ignorance was not good cause because she could have learned the information in a timely fashion. "Only when a plaintiff is truly prevented from obtaining the information can good cause be established, as in *Beaucage,* where the plaintiff offered evidence that the police and prosecutors withheld crucial information." *Id.* at 143 (citing *Beaucage v. City of Rockland,* 760 A.2d 1054, 1056 (Me.2000)). The plaintiffs have not presented any evidence raising a genuine issue of material fact as to whether they were "truly prevented" from procuring information that would support Portland's liability. As defendants point out, in the 180 days following September 11, 2001, there were hundreds of articles, appearing as early as September 12, 2001, describing the fact that two of the terrorists had flown from Portland to Boston. Moreover, no information was deliberately withheld by the defendant.

Plaintiffs point to *Springer v. Seaman,* 662 F.Supp. 229 (D.Me.1987). In *Springer,* the plaintiff brought a defamation action based on a letter criticizing plaintiff's job performance; plaintiff was completely unaware of the existence of the letter until more than five months after her cause of action accrued. *See id.* at 230. The court held that plaintiff had good cause for the delay because there was no way for the plaintiff to even have known "that he had a cause of action for defamation until he learned the contents of the letter." *Id.* at 229. Unlike the *Springer* plaintiff, the plaintiffs here clearly were on notice that they had a basis for a civil action immediately after the attacks occurred.

■ The fact that some of the plaintiffs did not retain counsel until after the 180 days had passed also cannot constitute "good cause" under Maine law. In *Rodri-*

*guez v. Joyce*, the court did not excuse the failure to file a notice of claim even when the plaintiff was incarcerated during the 180 day period, was unfamiliar with English, and could not retain a lawyer until after the 180 day period expired. 693 F.Supp. 1250, 1252 (D.Me.1988). Moreover, the plaintiffs' inability to assist their counsel because of emotional distress also does not qualify as "good cause." In *Begin v. City of Auburn*, plaintiff was involved in an automobile accident and suffered complete memory loss. No. CV–88–71, 1989 Me.Super. LEXIS 233 at *5 (Me.Super.Ct. Nov. 15, 1989). The court held that even though the plaintiff could not provide assistance to his attorney due to his memory loss, he had sufficient belief in his own innocence that he consulted with an attorney soon after the accident and could have initiated the administrative process in a timely manner. *See id.* at *5–6. And lastly, plaintiffs' uncertainty about whether filing a notice of claim would constitute waiver of their right to seek compensation from the Victim Compensation Fund is not good cause; counsel should have made an application to the court to resolve this issue, as was done with respect to the notices of claim against the Port Authority of New York and New Jersey.[2]

Accordingly, I find that the plaintiffs have not raised any genuine issues of material fact with respect to whether they had good cause for their failure to file timely notices of claim. The plaintiffs'

claims against the City of Portland are dismissed, and the Clerk of the Court shall remove the City of Portland from the caption as a defendant in the following cases: *Lopez v. United Airlines,* 02 Civ. 458; *Sweeney v. United Airlines,* 02 Civ. 1727; *Koutny v. United Airlines,* 02 Civ. 2802; *Miller v. American Airlines,* 02 Civ. 3676; *Bolourchi v. United Airlines,* 02 Civ. 6363; *Baker v. United Airlines,* 02 Civ. 6364; *Titus v. United Airlines,* 02 Civ. 6365; *Hackel v. AMR Corp.,* 02 Civ. 7143; *Wahlstrom v. AMR Corp.,* 02 Civ. 7144; *Brandhorst v. UAL Corp.,* 02 Civ. 7151; *Pocasangre v. UAL Corp.,* 02 Civ. 7152; *Jones v. UAL Corp.,* 02 Civ. 7153; *Bavis v. UAL Corp.,* 02 Civ. 7154; *LeBlanc v. AMR Corp.,* 02 Civ. 7155; *Keating v. AMR Corp.,* 02 Civ. 7156; *Brandhorst v. UAL Corp.,* 02 Civ. 7204; *Lee v. AMR Corp.,* 02 Civ. 7271; *Holland v. AMR Corp.,* 02 Civ. 8916; and *Booms v. AMR Corp.,* 02 Civ. 8918.[3]

In *Mariani v. United Air Lines,* 01 Civ. 11628, the plaintiff is currently *pro se* and has not made any submission in opposition to this motion. It is unclear whether she was put on notice of Portland's motion. The City of Portland shall either promptly file proof that it gave such notice, or serve the plaintiff at her address at 12 Grove Street, Derry, NH 03038, with copies of the motion, briefs, and the notice required by Local Civil Rule 56.2 by June 2, 2003. The City of Portland will also serve on the

---

**2.** I also note that some of the lawsuits were filed before the 180-day limit, and that the suits were amended after the 180 days had passed to include the City of Portland as a defendant. The filing of the lawsuits, constituting an election between such suits and applying to the Victim Compensation Fund, is further indication that plaintiffs were aware, or should have been aware, of their potential claim against Portland, yet failed to comply with Maine law within the time constraints imposed by law.

**3.** There are three additional complaints currently before me naming the City of Portland as a defendant that have not been served on Portland: *Schroeder v. American Airlines,* 02 Civ. 7185; *Certain Underwriters at Lloyd's v. AMR Corp.,* 03 Civ. 131; and *Castrillon v. AMR Corp.,* 03 Civ.2004. Because these plaintiffs have not served their complaints and have not addressed whether they filed timely notices of claim or had good cause for any failure to do so, this order does not affect their cases.

plaintiff a copy of this Order. The plaintiff shall make any submission in opposition to Portland's motion by July 3, 2003. Portland may reply by July 14, 2003.

SO ORDERED.